IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2018 MAR 26 PM 4:31

LEO E. MURILLO,
        Plaintiff,
-vs-

TRAVIS COUNTY, TEXAS,
        Defendant.

CAUSE NO.:
AU-17-CA-00113-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Travis County, Texas's Motion for Summary Judgment [#16], Plaintiff Leo Murillo's Response [#20] in opposition, and Travis County's Reply [#22] in support. Having reviewed the documents, the relevant law, and the case file as a whole, the Court now enters the following opinion and order.

### Background

In January 2015, Travis County hired Murillo as a mailroom assistant. Resp. Mot. Dismiss [#20-1] Attach. 1 at 5 (Murillo Dep.).[1] Murillo found the mailroom to be a jarring place to work, with "loud and intense verbal arguments, insults, and profanity." Resp. Mot. Dismiss [#20] at 7; *id.* [#20-1] Attach. 1 at 65, 69–70 (Investigation Report). More troublingly, Murillo's supervisor, Gary Russell, and coworker, Kim Moore, regularly used racial slurs and offensive language in the mailroom. *Id.* Russell and Moore referred to Murillo as a "meskin" many times "[b]ehind Murillo's back," and on at least four separate occasions, Russell told Murillo he was a "meskin" and referenced Murillo's "meskin" family. Resp. Mot. Dismiss [#20] at 5, 18; *id.* [#20-

---

[1] In the interest of consistency, all page number citations herein refer to CM/ECF pagination.

1

2] Attach. 2 at 10 (Frederick Aff.); *id.* [#20-1] Attach. 1 at 54–58 (Murillo Aff.); Murillo Dep. at 11. Additionally, Russell told Murillo the mailroom was "English only" and that he could not speak Spanish with a Hispanic summer intern. Murillo Aff. Murillo also repeatedly witnessed Russell and Moore using racial slurs to refer to an African American coworker, Leroy Frederick. Investigation Report; Murillo Aff.

Once, when Murillo had a disagreement with Russell at work, Murillo told Russell "I'm not afraid of you." Murillo Aff.; Murillo Dep. at 11–12. In response, Russell pulled out a large knife and showed it to Murillo. *Id.* On another occasion, Murillo heard Russell tell Frederick that Russell was not afraid of Frederick because "I've got a knife." Murillo Dep. at 11–12. Murillo interpreted these comments as implied threats of violence. Murillo Aff.

Murillo complained to Travis County on multiple occasions about Russell and Moore's conduct in the mailroom. Murillo initially followed Travis County's established complaint procedure and contacted Travis County Human Resources (HR) Representative Tony Robertson and HR Manager Tom Ashburn, on at least two occasions in the spring and summer of 2015, to complain about the racial slurs used in the mailroom as well as Russell's brandishing of a knife. Murillo Dep. at 12, 33–34. At some point, Frederick also reached out to Robertson and Ashburn to complain about the use of racist language in the mailroom. Frederick Aff. No action was taken with respect to these complaints. Murillo Aff.

Then, on August 18 or 19, 2015, Murillo delivered an anonymous letter detailing his complaints about the mailroom environment to various Travis County Commissioners, Director Steven Broberg, and Robertson. Resp. Mot. Dismiss [#20-2] Attach. 2 at 12–13 (August 2015 Letter); Investigation Report at 63. Travis County quickly initiated an investigation into the allegations described in Murillo's letter. Investigation Report at 63. On September 9, 2019, after

2

the investigation had already begun, Murillo delivered a second letter to the same officials and employees which identified Murillo as the author of the first, anonymous letter. *Id.* The investigation determined Murillo's allegations of racial slurs, derogatory language, and profanity in the workplace were accurate and concluded the mailroom had become a hostile work environment as defined by the EEOC. *Id.* at 69–70.

On September 10, 2015, the mailroom staff was directed to attend mediation to address the concerns raised in Murillo's letter. Resp. Mot. Summ. J. [#20-2] Attach. 2 at 46–47 (Ashburn Aff.). On September 30, 2015, Travis County delivered a memo to Murillo informing him the County had completed its investigation and "appropriate corrective action will be taken." *Id.* [#20-2] Attach. 2 at 50 (Concluding Memo). This corrective action included verbally counselling Russell regarding his behavior in the workplace and holding two trainings in October 2015 on discrimination, harassment, and workplace civility. Ashburn Aff.

Eventually, Russell discovered Murillo was responsible for lodging the complaints with Travis County. Resp. Mot. Summ. J. [#20-2] Attach. 2 at 52. On October 2, 2015, Russell confronted Murillo about the complaints and asked why Murillo had "stab[bed] [him] in the back." *Id.* When Murillo explained he was offended by Russell's frequent use of racial slurs, Russell laughed and told Murillo "this is far from over." *Id.*

After the investigation and remediation concluded, Russell began to contact people to whom Murillo delivered mail and asked them to inform him if Murillo made a mistake. Murillo Aff. Additionally, Russell and Moore stopped speaking to Murillo except when necessary, and Ashburn no longer went out of his way to have conversations with Murillo. Murillo Aff.; Murillo Dep. at 29. Ultimately, Murillo reported Russell's behavior to Robertson and Broberg. Murillo Aff. Travis County took no action in response to this report from Murillo,

3

and in February 2016, Murillo submitted a letter of resignation. *Id.* Upon receiving the news Murillo would be retiring, Ashburn emailed Broberg and remarked, "This is good news for everyone." Resp. Mot. Summ. J. [#20-2] Attach. 2 at 57.

On February 15, 2017, Murillo filed this Title VII lawsuit alleging Travis County discriminated against him on the basis of his national origin and then retaliated against him for complaining. Compl. [#1] at 6. Travis County now moves for summary judgment. Mot. Summ. J. [#16]. This pending motion is ripe for review.

## Analysis

### I.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

4

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

Murillo brings hostile work environment and employment discrimination claims under 42 U.S.C. § 2000e–2(a) and a retaliation claim under § 2000e–3(a). The Court examines each of these claims in turn.

## A. Hostile Work Environment

To establish a hostile work environment claim under § 2000e–2(a), a plaintiff must prove (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 653–54 (5th Cir. 2012) (internal quotation marks and citation omitted).[2] "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks omitted). In evaluating the severity and pervasiveness of the harassment, courts consider not only the frequency of the harassment but also "whether it is physically threatening or humiliating, or a mere offensive utterance" as well as "whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). Ultimately, the question of whether a work environment is sufficiently hostile as to establish a claim under Title VII depends upon whether the plaintiff subjectively perceived the environment to be hostile or abusive and whether a reasonable person would find it to be so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Where, as here, the plaintiff alleges harassment by a supervisor,[3] the employer is liable for the actions of the supervisor in two circumstances. *Vance*, 570 U.S. at 428–32. First, the employer is liable if the supervisor took a "tangible employment action" against the plaintiff

---

[2] *Hernandez* also suggests plaintiffs must prove a fifth element—that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez*, 670 F.3d at 653–54. However, the plaintiff need not prove this fifth element if the alleged harassment is inflicted by a supervisor. *See Vance v. Ball State University*, 570 U.S. 421, 428–32 (2013) (explaining employer is vicariously liable for supervisor's harassment unless employer can establish an affirmative defense).

[3] Murillo alleges Russell is a "supervisor" and Travis County has not raised any arguments in response. The Court is therefore without occasion to consider whether Russell does or does not qualify as a "supervisor" under *Vance*. *See Vance*, 570 U.S. at 450 ("[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim.").

6

resulting in a significant change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–65; *Faragher*, 524 U.S. at 790, 807). Second, even if the supervisor did not take a tangible employment action, the employer is liable unless it can show (1) it exercised reasonable care to prevent and promptly correct any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Vance*, 570 U.S. at 428–32.

Travis County argues it is entitled to summary judgment on Murillo's hostile work environment claim for two reasons. First, Travis County argues the alleged harassment is not severe or pervasive as a matter of law. Mot. Summ. J. [#16] at 6–8. Second, Travis County argues that, as a matter of law, it exercised reasonable care to prevent and correct the harassing behavior once it received Murillo's complaint in August 2015. *Id.* at 12–14.

The Court concludes, however, that genuine issues of material fact preclude summary judgment on Murillo's hostile work environment claim. First, viewing the record in the light most favorable to Murillo, there is a genuine issue of material fact as to whether a reasonable person would perceive the harassment directed against Murillo to be so severe or pervasive that it altered the conditions of Murillo's employment. Murillo states Russell directed derogatory slurs towards Murillo on at least four separate occasions over a period of several months and once impliedly threatened Murillo with a large knife. Murillo Aff.; *see also Ellerth*, 524 U.S. at 763 (noting "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character"); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280–81 (4th Cir. 2015) ("As we and several of our sister courts of appeals have recognized . . . [perhaps] no single act can more quickly alter the conditions of employment and create an abusive working

7

environment than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates." (internal quotation marks and citations omitted)).[4] Murillo also observed Russell use racial slurs to refer to an African American coworker, Leroy Frederick, on at least fifty different occasions during his roughly one-year tenure in the mailroom. Murillo Aff.; *Hernandez*, 670 F.3d at 654 ("We have said that cross-category discrimination could be relevant when there is a sufficient correlation between the kind of discrimination claimed by a plaintiff and that directed at others."). A reasonable jury confronted with these facts could conclude Russell's harassment was sufficiently severe or pervasive as to alter the conditions of Murillo's employment. *See Boyer-Liberto*, 786 F.3d at 280–81 (finding a reasonable jury could conclude supervisor created hostile work environment by twice referring to plaintiff as a "porch monkey"); *cf. Hernandez*, 670 F.3d at 652 (finding two uses of racially derogatory term directed toward Hispanics over ten-year period insufficient to create fact issue as to hostile work environment); *Vallecillo v. U.S. Dep't of Hous. & Urban Dev.*, 155 Fed. App'x 764, 766–67 (5th Cir. 2005) (per curiam) (holding supervisor did not create hostile work environment by referring to plaintiff as an "aggressive Hispanic" and "Che Guavara" on two separate occasions because statements were "not sufficiently severe or pervasive").

Second, there is genuine issue of fact as to whether Travis County is entitled to an affirmative defense because it exercised reasonable care to prevent and promptly correct the harassing behavior. Travis County argues it acted promptly to correct the harassing behavior by beginning its investigation within days of receiving Murillo's anonymous letter and by implementing its remedial program by October 2015. Mot. Summ. J. [#16] at 12–14. However,

---

[4] Russell also frequently referred to Murillo as a "meskin" and "that meskin" when Murillo was not present. Frederick Aff. However, there is no indication Murillo learned of these references while he was still employed in the mailroom, and Murillo does not otherwise explain how these references might have affected the terms and conditions of his employment.

8

in his deposition, Murillo testified he first reported Russell's use of racial slurs to the HR Manager Tom Ashburn earlier in the summer of 2015 and that Ashburn took no action on this earlier complaint. Murillo Dep. at 12, 33–34; Murillo Aff. Travis County does not argue it acted promptly with respect to Murillo's prior complaint,[5] and accordingly, a genuine issue of fact exists as to whether Travis County took reasonable care to promptly address the harassment alleged by Murillo.

For the foregoing reasons, the Court denies summary judgment with respect to Murillo's hostile work environment claim.

B.   **Constructive Discharge**[6]

To establish a claim of constructive discharge under § 2000e-2(a), the plaintiff must show "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (internal quotation marks and citation omitted); *see also id.* ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."). The plaintiff must also show the harassment is tied to the plaintiff's membership in a protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (rendering unlawful discrimination by an employer against an individual "because of such individual's race, color, religion, sex, or national origin"); *Burlington N. & Santa Fe R.R.*

---

[5] Travis County argues the Court should not give credence to Murillo's earlier complaint to Ashburn because Murillo did not mention it in his subsequent letters. Reply Mot. Summ. J. [#22] at 8. Credibility determinations, however, are the province of the jury. *See, e.g.*, *Williams v. Hampton*, 797 F.3d 276, 282 (5th Cir. 2015) (noting credibility determinations fall to the jury, not the judge).

[6] As a preliminary matter, Travis County argues Murillo is barred from bringing a constructive discharge claim because Murillo allegedly failed to raise this claim in the charge he submitted to the EEOC, thereby depriving this Court of jurisdiction to consider it. Mot. Summ. J. [#16] at 8–9. This argument is without merit. Murillo's EEOC complaint squarely alleges employment discrimination on the basis of race and national origin, and the EEOC inquiry explicitly noted Murillo had resigned because he could no longer stand the discrimination and retaliation he was subjected to in the workplace. Mot. Summ. J. [#16-13] Ex. 12 at 1 (EEOC Charge) ("I believe I have been discriminated against because of my race/national origin and retaliated against for opposing discrimination."); *see also* Resp. Mot. Summ. J. [#20-2] Attach. 2 at 29–32 (EEOC Mem.). The Court therefore finds Murillo properly exhausted his administrative remedies with respect to his constructive discharge claim.

9

*Co. v. White*, 548 U.S. 53, 63 (2006) (noting § 2000e-2(a) seeks to prevent injury to individuals based on their membership in a protected class). Travis County argues it is entitled to summary judgment on Murillo's constructive discharge claim because Murillo has failed to put forward evidence from which a reasonable jury could conclude Murillo was constructively discharged on account of his race or national origin. Mot. Summ. J. [#16] at 9–10.

To survive summary judgment on his constructive discharge claim, Murillo must point to facts indicating he was harassed on account of his membership in a protected class, such as race or national origin. *See* 42 U.S.C. § 2000e-2(a)(1); *Burlington*, 548 U.S. at 63. Murillo has not done so. Rather, Murillo alleges he felt compelled to resign because he was treated differently after he filed his complaint. Murillo Aff.; Resp. Mot. Dismiss [#20] at 23 (alleging "the environment had become . . . more stressful and hostile after making the complaint than it had been before"). While such harassment in retaliation for making a complaint may form the basis of a retaliation claim under § 2000e-3(a), it cannot also form the basis of a claim under § 2000e-2(a) unless the harassment is at least partially premised on Murillo's membership in a protected class. *See Burlington*, 548 U.S. at 63 (explaining § 2000e-2(a) "seeks to prevent injury to individuals based on who they are, *i.e.*, their status" while § 2000e-3(a) "seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct"). Murillo has failed to establish a genuine issue of fact exists with respect to his constructive discharge claim because he has pointed to no evidence suggesting he was harassed on account of his race or national origin after filing his complaint. *See* Resp. Mot. Summ. J. [#20]. Travis County is therefore entitled to summary judgment on Murillo's constructive discharge claim.

### C. Retaliation

To establish a case of retaliation, the plaintiff must show (1) he engaged in a protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between the protected activity and the adverse action. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). An action qualifies as materially adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 67–68. Travis County argues Murillo cannot establish a claim of retaliation because he cannot show he was subject to a materially adverse action. Mot. Summ. J. [#16] at 14–17.

The Court finds there is a material issue of fact as to whether Murillo was subject to a materially adverse action. When Russell learned Murillo had reported his use of racial slurs in the workplace, he confronted Murillo and told him "this is far from over." Resp. Mot. Summ. J. [#20-2] Attach. 2 at 52. Russell also accused Murillo of "stabb[ing] [him] in the back." *Id*. After making these comments, Russell began to contact people to whom Murillo delivered mail and asked them to inform him if Murillo made a mistake. Murillo Aff. Assuming Russell possessed the ability to fire Murillo or get him fired,[7] there is a genuine issue of material fact as to whether this course of conduct qualifies as materially adverse action because it might "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 67–68.

### Conclusion

A genuine issue of fact exists with respect to Murillo's hostile work environment and retaliation claims. Thus, these claims survive summary judgment. However, Murillo's

---

[7] *See supra* note 3 (noting Travis County has not contested Murillo's characterization of Russell as a "supervisor").

11

constructive discharge claim fails as a matter of law, and therefore Travis County is entitled to summary judgment on that claim.

Accordingly,

IT IS ORDERED Travis County's Motion for Summary Judgment [#16] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 26th day of March 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE